# AFFIDAVIT OF FBI SPECIAL AGENT LAURA SMITH IN SUPPORT OF APPLICATIONS FOR SEIZURE WARRANTS

I, Laura Smith, state:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") assigned to the Boston, Massachusetts Field Office. Since joining the FBI in 2010 I have been assigned to complex financial investigations as a forensic accountant and I am currently on a squad that investigates economic crimes, including various forms of corporate fraud and securities fraud. As a federal agent, I am authorized to investigate violations of United States law and to execute warrants issued under the authority of the United States. I hold a Bachelor's degree in Criminal Justice-Economic Crimes Investigation and a Master's degree in Accounting.

2. I make this affidavit in support of applications for seizure warrants for the following accounts:

   a. All funds on deposit up to $140,000 in Bank of America account number ▇▇▇▇ 4999, held in the name of Donna C. Heinel and ▇▇▇▇▇▇▇;

   b. All funds on deposit up to $100,000 in City National Bank account number ▇▇ 8419, held in the name of Jorge Salcedo and ▇▇▇▇▇▇;

   c. All funds on deposit up to $50,000 in Wells Fargo bank account number ▇▇▇▇ 5954, held in the name of Bill Ferguson Volleyball Camps LLC;

   d. All funds on deposit up to $1,138,500 in PNC Bank account number ▇▇▇▇-6522, held in the name of Gordon M. Ernst and ▇▇▇▇▇▇;

   e. All funds on deposit up to $289,963.78 in PNC Bank account number ▇▇▇▇-6905, held in the name of Gordon M. Ernst and ▇▇▇▇▇▇;

   f. All funds on deposit up to $650,000 in Merrill Lynch bank account number ▇▇▇▇ 8442, held in the name of ▇▇▇▇▇ and Gordon Ernst JTWROS;

   g. All funds on deposit in Vanguard SEP IRA account number ▇▇▇▇▇ 9912, held in the name of Gordon M. Ernst;

  h.  All funds on deposit up to $289,000 in Bank of America checking account number ▇▇▇ 1470, held in the name of Martin Fox;

  i.  All funds on deposit up to $100,000 in Bank of America checking account number ▇▇▇ 7589, held in the name of ▇▇▇▇▇▇ and Martin S. Fox; and

  j.  All funds on deposit up to $25,000 in Schools First Federal Credit Union account number ▇▇▇ 5612 (ID 71), held in the name of Ali Khosroshahin

(collectively, the "Accounts").

### STATUTORY FRAMEWORK

3. As set forth below, I have probable cause to believe that the Accounts are subject to forfeiture to the United States:

  a.  pursuant to 18 U.S.C. § 981(a)(1)(C) as property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1962, consisting of multiple acts indictable under (i) 18 U.S.C. § 1341 (relating to mail fraud); (ii) 18 U.S.C. §§ 1341 and 1346 (relating to honest services mail fraud); (iii) 18 U.S.C. § 1343 (relating to wire fraud); (iv) 18 U.S.C. §§ 1343 and 1346 (relating to honest services wire fraud); and (v) 18 U.S.C. § 1956 (relating to the laundering of monetary instruments); and

  b.  pursuant to 18 U.S.C. § 1963(a) and (b) and 28 U.S.C. § 2461(c) as any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity in violation of 18 U.S.C. § 1962, consisting of multiple acts indictable under the offenses outlined above in paragraph 3(a).

4. This Court has authority to issue a seizure warrant pursuant to 18 U.S.C. § 981(b)(2), which states that "[s]eizures pursuant to this section shall be made pursuant to a warrant obtained in the same manner as provided for a search warrant under the Federal Rules of

Criminal Procedure." This Court has jurisdiction to enter the requested seizure warrant in the District of Massachusetts because a forfeiture action may be filed in this District. Federal Rules of Criminal Procedure Rule 41 provides that "a magistrate judge having authority in any district where activities related to the crime may have occurred...may issue a warrant for property that is located outside the jurisdiction of any state or district...." *See also* 18 U.S.C. § 1963(j) ("The district courts of the United States shall have jurisdiction to enter orders as provided in this section without regard to the location of any property which may be subject to forfeiture under this section or which has been ordered forfeited under this section.").

5. This Court also has authority to issue the requested seizure warrants pursuant to 21 U.S.C. § 853(f), as incorporated by 28 U.S.C. § 2461(c), which authorizes "the issuance of a warrant authorizing the seizure of property subject to forfeiture under this section in the same manner as provided for a search warrant. If the court determines that there is probable cause to believe that the property to be seized would, in the event of conviction, be subject to forfeiture and that [a restraining order] may not be sufficient to assure the availability of the property for forfeiture."

6. A restraining order, pursuant to 21 U.S.C. § 853(e) and/or 18 U.S.C. § 1963(d), will not be sufficient to preserve the assets in question given the ease with which funds may move out of the Accounts via wire transfer, electronic funds transfer, or otherwise, and despite best intentions, financial institutions cannot guarantee that money restrained, but not seized, will be available for forfeiture at a later time.

7. Because this affidavit is being submitted for the limited purpose of showing probable cause for the issuance of the requested seizure warrants against the Accounts, I have not included each and every fact known to me and other law enforcement officers involved in this

investigation. Rather, I have included only those facts that I believe are necessary to establish probable cause for the issuance of the requested seizure warrants.

## BACKGROUND

8.  I am currently participating in the investigation of, among others, DONNA HEINEL, JORGE SALCEDO, WILLIAM FERGUSON, GORDON ERNST, MARTIN FOX and ALI KHOSROSHAHIN (the "Defendants"). As a result of this investigation, on March 5, 2019, the Grand Jury returned an indictment, under seal, charging these individuals, and others, with racketeering conspiracy in violation of 18 U.S.C. § 1962(d), consisting of multiple acts indictable under (i) 18 U.S.C. § 1341 (relating to mail fraud); (ii) 18 U.S.C. §§ 1341 and 1346 (relating to honest services mail fraud); (iii) 18 U.S.C. § 1343 (relating to wire fraud); (iv) 18 U.S.C. §§ 1343 and 1346 (relating to honest services wire fraud); and (v) 18 U.S.C. § 1956 (relating to the laundering of monetary instruments). As described in the Indictment, the Defendants obtained property that constitutes or is derived from proceeds obtained, directly or indirectly, from racketeering activity in violation of 18 U.S.C. § 1962. *See* 18 U.S.C. § 1963(a).

9.  Further, 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1) provide for forfeiture of all property involved in a violation of 18 U.S.C. § 1956. Based on evidence gathered during the investigation, there is probable cause to believe that the Defendants have comingled bribe money with untainted funds in order to facilitate money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (concealment money laundering). The First Circuit has found that the term "property involved" means both tainted and untainted funds which have been comingled, so long as the "comingling was done to facilitate money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i)." *U.S. v. McGauley*, 279 F.3d 62, 76 (1st Cir. 2002); *see also U.S. v. Lyons*, 870 F. Supp. 2d 281, 285-86 (D. Mass. 2012).

10. This investigation began in or about the spring of 2018, when federal agents started investigating an individual known as Cooperating Witness 1 ("CW-1").[1] CW-1 is the owner and operator of a college admissions consulting business called "The Edge College and Career Network, LLC" ("The Edge"). In addition, CW-1 operates a charity, "The Key Worldwide Foundation" ("KWF"). KWF maintained several bank accounts (collectively, the "KWF charitable accounts"), including one located in the District of Massachusetts.

11. For the past year, through witness interviews, Court-authorized wiretap interceptions, consensual recordings, email and other search warrants, and document review, investigators have determined that CW-1 has conspired with others, including the individuals described herein: (1) to bribe college entrance exam administrators to facilitate cheating on college entrance exams; (2) to bribe coaches and administrators at elite universities to designate certain applicants as recruited athletes or as other favored candidates, thereby facilitating the applicants' admission to those universities; and (3) to conceal the nature and source of the bribe payments by funneling payments through the KWF charitable accounts.

12. Based on these investigative techniques, among others, the investigation has shown that CW-1 uses both the Edge and KWF to engage in a multi-faceted bribery and fraud scheme to help his clients win admission for their children into elite universities nationwide.

---

[1] CW-1 has agreed to plead guilty in the United States District Court for the District of Massachusetts to an Information charging him with racketeering conspiracy, in violation of 18 U.S.C. § 1962(d); money laundering conspiracy, in violation of 18 U.S.C. § 1956(h); conspiracy to defraud the United States, in violation of 18 U.S.C. § 371; and obstruction of justice, in violation of 18 U.S.C. § 1512(c). CW-1 has been cooperating with the government's investigation since in or about late September 2018, in the hope of obtaining leniency when he is sentenced. In or about October 2018, after he began cooperating with the government, CW-1 alerted several subjects of the investigation to its existence, resulting in the obstruction of justice charge to which he has agreed to plead guilty. Information CW-1 has provided has been corroborated by, among other things, Court-authorized wiretaps, emails, documents, consensual recordings, and interviews of other witnesses, including cooperating witnesses.

13. The college entrance exam cheating scheme generally worked as follows: CW-1 helped his clients cheat on college entrance exams by bribing college entrance exam administrators to allow a third party to take college entrance exams in place of the actual students, to provide students with correct answers, or to correct the students' answers after they had taken the exams, all for a fee of approximately $50,000 to $75,000. CW-1 paid test administrators between $5,000 and $10,000 per test to permit the cheating. FOX served as a conduit between CW-1 and a corrupt test administrator in Houston who, in exchange for payment, allowed cheating to occur on exams. CW-1 paid FOX bribes, and CW-1 believes that FOX, in turn, passed these payments onto the corrupt administrator. In July 2018, CW-1 bypassed FOX and paid the test administrator directly for her role in the cheating scheme.

14. The college recruitment scheme generally worked as follows: CW-1 bribes college athletics coaches and administrators at elite universities such as Stanford, Georgetown, the University of Southern California ("USC"), the University of California at Los Angeles ("UCLA") and Yale to recruit his client's children, without regard to their athletic abilities, thereby facilitating their admission to these universities. CW-1's clients paid him up to $6.5 million per applicant. CW-1, in turn, paid large bribes to athletics coaches and administrators through KWF.

15. CW-1 disguised the bribe payments as donations made by his charity, KWF. CW-1's clients made payments in the form of "donations" to KWF, and CW-1 then used the KWF charitable accounts to pay bribes to coaches, test administrators, and others, all in furtherance of his fraudulent scheme.

16. On March 5, 2019, a federal grand jury in the District of Massachusetts returned an indictment charging twelve individuals with racketeering conspiracy, in violation of 18 U.S.C. § 1962(d). These individuals include coaches and an administrator at elite universities who

accepted bribes in exchange for designating the children of CW-1's clients as recruited athletes, thereby facilitating their admission to those universities.

### PROBABLE CAUSE

17. Based on the investigation to date, including court-authorized wiretaps, review of emails, bank records and other documents, consensual recordings, and interviews with witnesses, including cooperating witnesses, there is probable cause to believe that the following Accounts are subject to seizure because they contain proceeds obtained, directly or indirectly, as a result of the racketeering conspiracy—including, but not limited to, bribe payments received from KWF or the Edge—, and probable cause to believe that bribe payments from KWF and/or the Edge have been comingled with untainted funds in order to facilitate money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i), as part of the racketeering conspiracy.

#### A. HEINEL ACCOUNT

18. DONNA HEINEL is the senior associate athletic director at the University of Southern California. HEINEL accepted bribe payments over an approximately four-year period ending in 2019.

19. On or about July 13, 2018, HEINEL deposited a $20,000 check from KWF into Bank of America account number ending in 2591 ("BOA 2591"), held in the name of DONNA C. HEINEL and [REDACTED].

20. Shortly thereafter, on or about July 23, 2018, that same amount, $20,000, was transferred from BOA 2591 to Bank of America savings account number [REDACTED] 4999 ("BOA 4999"), held in the name of DONNA C. HEINEL and [REDACTED].

21. From August 2018 to January 2019, KWF provided $120,000 in checks to HEINEL. All $120,000 was deposited into BOA 4999.

22. A total of $140,000 in bribe payments from KWF, made since approximately July 13, 2018, have been traced to BOA 4999. Thus, I have probable cause to believe that up to at least $140,000 in BOA 4999 is property constituting or derived from proceeds obtained directly or indirectly as a result of racketeering activity.

### B. SALCEDO ACCOUNT

23. JORGE SALCEDO is the head men's soccer coach at the UCLA, who accepted bribe payments over an approximately two-year period ending in 2018.

24. Among those bribe payments, on or about October 31, 2018, SALCEDO deposited a $100,000 check from KWF into City National Bank account number ▆8419 ("CNB 8419"), held in the names of JORGE SALCEDO and ▆▆▆▆▆▆▆. Thus, I have probable cause to believe that up to at least $100,000 in CNB 8419 is property constituting or derived from proceeds obtained directly or indirectly as a result of racketeering activity.

### C. FERGUSON ACCOUNT

25. WILLIAM FERGUSON is the head women's volleyball coach at Wake Forest University, who accepted a bribe payment in 2017.

26. On or about July 17, 2017, FERGUSON deposited a bribe payment, in the form of a $50,000 check from KWF, into Wells Fargo Bank checking account number ▆5954 ("WF 5954"), held in the name of Bill Ferguson Volleyball Camps LLC.

27. Thus, I have probable cause to believe that up to at least $50,000 in WF 5954 is property constituting or derived from proceeds obtained directly or indirectly as a result of racketeering activity.

### D. ERNST ACCOUNTS

28. GORDON ERNST is the former head tennis coach at Georgetown University, who

accepted bribe payments over an approximately six-year period ending in 2018.

*Account PNC 6522*

29. From January 2012 to November 2012, ERNST deposited a total of $96,000 in checks that he received from The Edge into PNC Bank account number ▬▬6522 ("PNC 6522"), held in the names of GORDON M. ERNST and ▬▬▬▬.

30. From October 2013 to November 2017, ERNST deposited a total of $1,042,500 in checks that he received from KWF into PNC 6522.

31. A total of $1,138,500 in checks from The Edge and KWF have been deposited into PNC 6522. All of these checks were bribe payments made as part of the racketeering conspiracy.

32. Thus, I have probable cause to believe that up to at least $1,138,500 in PNC 6522 is property constituting or derived from proceeds obtained directly or indirectly as a result of racketeering activity.

*Account PNC 6905*

33. From July 2014 to May 2018, ERNST deposited a total of $1,039,963.78 in checks that he received from KWF into PNC Bank account number ▬▬6905 ("PNC 6905"), held in the name of GORDON M. ERNST and ▬▬▬▬. All of these checks were bribe payments made as part of the racketeering conspiracy.

34. ERNST transferred $550,000 from PNC 6905 to an account at Merrill Lynch, and $200,000 from PNC 6905 to an account at Vanguard. Those funds are subject to seizure requests relating to the Merrill Lynch and Vanguard accounts, described below.

35. As a result, I have probable cause to believe that up to at least $289,963.78 in PNC 6905 (the amount of bribe payments received into this account, less the amounts transferred to the

Merrill Lynch and Vanguard accounts) is property constituting or derived from proceeds obtained directly or indirectly as a result of racketeering activity.

*Account Lynch 8442*

36. On or about May 24, 2018, Ernst opened a brokerage account at Merrill Lynch, account number ▮▮▮8442 ("Lynch 8442"), held in the names of ▮▮▮▮▮ and GORDON ERNST JTWROS [Joint with Right of Survival].

37. On or about June 11, 2018, ERNST effected a $550,000 funds transfer from PNC 6905, an account to which ERNST deposited $1,039,963.78 in bribe payments between July, 2014 to May, 2018, to Lynch 8442.

38. On or about July 26, 2018, ERNST deposited a $100,000 check from KWF into Lynch 8442. This check was a bribery payment.

39. As a result, I have probable cause to believe that up to at least $650,000 in Lynch 8442 is property constituting or derived from proceeds obtained directly or indirectly as a result of racketeering activity.

*Account Vanguard 9912*

40. On or about March 23, 2011, ERNST opened a Vanguard SEP IRA account number ▮▮▮9912 ("Vanguard 9912"), held in the name of GORDON M. ERNST.

41. From in or about 2012 to in or about 2014, ERNST, using PNC Bank account number ending 8308, and held in the name of GORDON M. ERNST and ▮▮▮▮▮, received a total of $436,500 in bribe payments from KWF and The Edge.[2]

42. From April 2012 to April 2014, ERNST wrote a total of $65,000 in checks from

---

[2] This account was closed in or around July 2014.

PNC Bank account ending in 8308 to Vanguard 9912. This $65,000 is derived from bribe payments made by KWF or The Edge, deposited into PNC 8308, and transferred to Vanguard 9912.

43. From April 2015 to April 2018, ERNST wrote a total of $200,000 in checks from PNC 6905 to Vanguard 9912. This $200,000 is derived from bribe payments made by KWF, deposited into PNC 6905, and transferred to Vanguard 9912.

44. Based on records obtained and reviewed, other than the $265,000 described above, no other principal deposits were made into Vanguard 9912. Because all of the deposits into the account are derived from bribe payments, any interest and earnings that accrued on those bribe payments in Vanguard 9912 also constitute property constituting or derived from proceeds obtained, directly or indirectly, from the racketeering activity. Thus, I have probable cause to believe that all of the funds in Vanguard 9912 are property constituting or derived from proceeds obtained directly or indirectly as a result of a racketeering activity.[3]

### E. FOX ACCOUNTS

45. MARTIN FOX is the president of a private tennis academy and camp in Houston, who received bribe payments from CW-1 in exchange for facilitating cheating on college entrance exams, as described above. FOX also received payments from CW-1 in exchange for introducing CW-1 to a tennis coach at the University of Texas at Austin for the purpose of facilitating the admission of a student to the university, through bribery, as a purported athletic recruit. FOX arranged similar bribes, on two occasions, with a varsity sports coach at the University of San Diego. FOX accepted bribe payments, at least, for the time period June 2015 to October 2016.

---

[3] The Grand Jury found probable cause that all funds in the Vanguard account were subject to forfeiture.

*BOA 1470*

46. From June 2015 to October 2016, FOX deposited a total of $289,000 in checks from KWF into Bank of America checking account number ▮▮▮▮ 1470 ("BOA 1470"), held in the name of MARTIN FOX.

47. Thus, I have probable cause to believe that up to at least $289,000 in BOA 1470 is property constituting or derived from proceeds obtained directly or indirectly as a result of racketeering activity.

*BOA 7589*

48. In June, 2016, FOX deposited a $100,000 check from KWF into Bank of America checking account number ▮▮▮▮ 7589 ("BOA 7589") held in the name of ▮▮▮▮ ▮▮▮▮ and MARTIN S. FOX.

49. Thus, I have probable cause to believe that up to at least $100,000 in BOA 7589 is property constituting or derived from proceeds obtained directly or indirectly as a result of a racketeering activity.

### F. KHOSROSHAHIN ACCOUNT

50. ALI KHOSROSHAHIN is the former head women's soccer coach at USC, who accepted bribe payments over an approximately five-year period ending in 2018.

51. Among those bribe payments, on or about October 29, 2018, KHOSROSHAHIN deposited a $25,000 check from KWF into Schools First Federal Credit Union investment checking account number ▮▮▮5612 (ID 71) ("SFFC 5612"), held in the name of ALI KHOSROSHAHIN. Thus, I have probable cause to believe that up to at least $25,000 in SFFC 5612 is property constituting or derived from proceeds obtained directly or indirectly as a result of racketeering activity.

## Conclusion

52. Based on the foregoing information set forth above, I have probable cause to believe that the Accounts are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) as property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1962; and pursuant to 18 U.S.C. § 1963(a) and (b), and 28 U.S.C. § 2461(c) as any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity in violation of 18 U.S.C. § 1962.

53. Accordingly, pursuant to 21 U.S.C. § 853(f), as incorporated by 28 U.S.C. § 2461(c), and 18 U.S.C. § 981(b)(2), I respectfully request that the Court issue warrants authorizing the seizure of any and all funds in the Accounts.

Signed under the pains and penalties of perjury this 11th day in March, 2019.

Laura Smith
Special Agent
Federal Bureau of Investigation

Subscribed and Sworn to before me on this 11th day of March, 2019

M. Page Kelley
United States Magistrate Judge